928 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shelia D. COON, Defendant-Appellant.
 No. 89-1489.
 United States Court of Appeals, Sixth Circuit.
 March 19, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 88-80398; De Mascio, J.
 E.D.Mich.
 AFFIRMED.
 Before BOYCE F. MARTIN, JR. and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Shelia Coon appeals her conviction for possessing cocaine with intent to distribute it, a violation of 21 U.S.C. Sec. 841(a)(1). Defendant Coon contends that the officers who searched her luggage at the Detroit Metropolitan Airport stopped her without reasonable suspicion and searched her luggage without probable cause, thus violating the Fourth Amendment. She also claims that evidence of her prior robbery convictions should not have been introduced against her for impeachment purposes. For the reasons that follow, the judgment of conviction is affirmed.
 
 I.
 
 2
 Some unusual events first aroused the suspicions of narcotics officers at the Los Angeles International Airport in the late evening hours of June 1, 1988. Defendant Shelia Coon, who had aroused their suspicions, left the airport on Flight 336, traveling on a one-way ticket paid for in cash to Detroit, Michigan. Before Flight 336 arrived at the Detroit Metropolitan Airport, the narcotics officers in Los Angeles had relayed their suspicions to officers Raymond Denton and Michael Ondejko, both of whom were assigned to the Drug Enforcement Administration Task Force at the Detroit airport. Based upon the information they received from Los Angeles, the officers decided to interview defendant Coon upon her arrival in Detroit. After allowing her to claim her luggage, they approached her, identified themselves, and asked permission to speak to her. Both officers were in plain clothes and no weapons were visible, if indeed either was actually armed.
 
 
 3
 The encounter took place as defendant Coon, carrying her luggage, passed through one set of automatic doors into a vestibule and prepared to pass through another set of automatic doors about ten feet away in order to leave the baggage claim area. Defendant Coon stopped between these two sets of automatic doors in the public area of the terminal and agreed to talk to the officers. During the conversation and at the officers' request, Ms. Coon permitted the examination of her ticket and her purse. The ticket bore the name "Kim Johnson," but the California driver's license found in her purse identified her as Shelia Coon, a circumstance that led the two officers to identify themselves further as narcotics officers and to request permission to search the luggage she had just reclaimed.
 
 
 4
 According to the unrebutted testimony of both officers, Coon gave her consent to the search of the luggage at her feet, although in the same breath she mentioned that she was uncertain about whether one of the pieces, a foldable garment bag, was actually hers. Officer Ondejko's search of that bag produced two "bricks" of cocaine.
 
 
 5
 Defendant Coon moved to suppress the cocaine but did not testify at the suppression hearing. At the hearing it was argued that she had been seized without probable cause or stopped without reasonable suspicion in violation of the Fourth Amendment and that her consent was therefore involuntary. It was also argued that she had never actually consented to the search. At the conclusion of the hearing, the court found that officers Denton and Ondejko had a reasonable, articulable suspicion which would justify a limited "stop" of the defendant as soon as she arrived in Detroit. App. at 21. The court went on to find, however, that the encounter between the police officers and defendant Coon was not a seizure. It found that when the officers approached defendant and obtained her permission to speak with her, "[s]he could have ignored the officers and proceeded through the second set of glass doors and left Metro Airport. However, she decided to stop and speak with the officers." App. at 23. The court further found that there was no evidence of coercion, trickery, or intimidation on the part of the agents when they initially secured the defendant's permission to talk with her, and it found that defendant was not restrained in any way from leaving the public area in which she was originally approached. Under all those circumstances, the court concluded that "[a] reasonable person would have believed that she was free to leave...." App. at 24. That being the case, the court held that Coon had freely and voluntarily consented to the search of her luggage, and it therefore overruled her motion to suppress evidence.
 
 
 6
 Defendant Coon also argues that the district court abused its discretion at the trial in admitting evidence of her prior felony convictions under Rule 609(a)(1), Federal Rules of Evidence. In particular, she objected in limine to the government's proposed use of two relatively recent robbery convictions, claiming that their probative value was outweighed by their prejudicial effect. The court found that the defendant's credibility would be a central issue in the case because, if she testified at all, she would likely disclaim any knowledge of the fact that narcotics were being transported in her luggage. After defendant Coon testified that she had no knowledge of the narcotics, the court permitted cross-examination as to her prior convictions, and the jury returned a verdict of guilty upon which a judgment of conviction and a sentence of twelve years were entered on April 20, 1989. This timely appeal followed.
 
 
 7
 Defendant raises two issues. First, she contends that the cocaine seized by narcotics officers should have been suppressed because the officers (a) lacked probable cause to seize her or search her luggage, (b) lacked a reasonable suspicion to stop her, and (c) did not obtain a valid consent to open her luggage. Second, Ms. Coon insists that the trial court abused its discretion when it allowed the introduction into evidence of her two prior convictions for robbery which, she argues, have little probative value on the question of credibility but great prejudicial effect.
 
 II.
 
 8
 A district court's factual findings made in consideration of a motion to suppress evidence are upheld unless they are clearly erroneous. See United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989). More specifically, questions concerning the voluntariness of a consent search are questions of fact and are reviewed under the clearly erroneous standard. See United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988) (per curiam). A finding of fact is clearly erroneous only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," see Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985), and where the district court's account of the evidence is plausible in the light of the whole record, its findings should be affirmed because "it is the function of the District Court rather than the Court of Appeals to determine the facts ..." in a suppression hearing. Murray v. United States, 487 U.S. 533, 543 (1988).
 
 
 9
 A trial court's decision to admit or suppress evidence of prior convictions under Rule 609, Federal Rules of Evidence, is reviewed only to determine whether the court abused its discretion. See United States v. Sloman, 909 F.2d 176, 181 (6th Cir.1990); United States v. Williams, 587 F.2d 1 (6th Cir.1978) (per curiam order).
 
 III.
 A. The Search
 
 10
 Defendant Coon argues that the cocaine seized from the luggage in her possession should have been suppressed because the seizing officers violated her Fourth Amendment rights. She further argues that the police seizure of the cocaine was unreasonable because no search warrant had been obtained and because the officers at the initial point of encounter with her lacked probable cause to seize her or search the luggage in her possession.
 
 
 11
 The facts of the case show that the officers who approached the defendant in the Detroit Metropolitan Airport did so by simply walking up to her, properly identifying themselves, and politely asking her permission to engage in conversation. App. at 98, 103. Ms. Coon concedes that she agreed to speak to the officers, that she voluntarily allowed them to inspect her flight ticket, and that she agreed to the search of her purse that revealed her driver's license and true name. Brief of Appellant at 7.
 
 
 12
 The police officers both testified without contradiction in the suppression hearing that Ms. Coon freely and unequivocally consented to the search of both pieces of luggage in her possession. App. at 96, 105. According to the officers, she expressed some doubt as to whether or not the suit bag in which the cocaine was found was hers. We believe that her "afterthought" could not affect the validity of the search: either the bag was hers (in ownership or possession) and she consented to its search, or it was not hers and her consent to search it was unnecessary.[1] At the trial, Ms. Coon admitted that she consented to the search of the luggage by the officers.
 
 
 13
 The district court found that defendant Coon had neither been seized nor detained prior to giving her consent to search.
 
 
 14
 Defendant remained in a public area, had possession of her ticket, driver's license, purse and luggage. She could have exited the last set of doors if she chose to do so. There is no evidence that defendant was coerced, tricked, or intimidated into stopping and speaking with the agents. Moreover, there is no evidence that defendant was compelled to remain or was restrained from leaving the interview area. Under such facts, we conclude that defendant was not in custody at any time prior to the discovery of the cocaine. A reasonable person would have believed that she was free to leave anytime after the officers stopped her. See U.S. v. Mendenhall, 446 U.S. 544, 554-55 (1980).
 
 
 15
 App. at 24.
 
 
 16
 Based on these findings of fact, the court concluded that the defendant "freely gave her consent to the search." App. at 25. These findings of fact are not clearly erroneous, because what happened in this case was neither a Fourth Amendment seizure nor a detention. Instead, it was a polite, voluntary encounter between a citizen and two police officers in the course of which there was no coercion or intimidation and which resulted in the citizen's grant of consent to search. As this court has previously explained,
 
 
 17
 [n]ot all encounters between the police and citizens are seizures within the meaning of the fourth amendment. Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878-79, 20 L.Ed.2d 889 (1968). Police questioning, by itself, does not result in a fourth amendment violation. Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-63, 80 L.Ed.2d 247 (1984); Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229 (1983). The request for, and examination of, an airline ticket and driver's license do not amount to a seizure under the fourth amendment. Royer, 460 U.S. at 501, 103 S.Ct. at 1326; see United States v. Collis, 766 F.2d 219, 221 (6th Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985).
 
 
 18
 United States v. Winfrey, 915 F.2d 212, 216 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 709 (1991).
 
 
 19
 The district court found that the Los Angeles police officers "had a reasonable articulable suspicion to stop and question defendant at the moment she left the ticket area and headed for Flight 336. That reasonable suspicion was conveyed to the agents in Detroit." App. at 21. The district court, therefore, was justified in concluding that the Detroit police officers had the kind of suspicion that would permit a Terry stop. See Terry v. Ohio, 392 U.S. 1 (1968). This finding, however, is not necessary to a determination that the search of the defendant's luggage comported with the Constitution, because the police officers would have been free to request consent to search even though they had no suspicion whatever of criminal activity on her part. While a request for consent to search in the absence of any suspicion might well be irrational or inexplicable, that fact would not render the consent any less free nor the fruits of any consequent search inadmissible.
 
 
 20
 In United States v. Flowers, 909 F.2d 145, 147 (6th Cir.1990), we held that not even an articulable suspicion on the part of police officers was a necessary predicate to sustaining a consent search. In Flowers, an airline passenger attracted the attention of the police because they thought he wore "inappropriate clothing" for the season and because he appeared to be nervous. An officer approached Flowers and asked permission to speak with him, as the officers in the present case did. The officer next asked for permission to see Flowers' airline ticket and, upon its production, noted that it was a one-way ticket purchased with cash. When the police officer finally asked Flowers' permission to search his person, Flowers agreed and the search revealed two kilograms of cocaine taped to Flowers' stomach. The entire encounter with Flowers occurred in a public area outside the terminal at the Detroit Metropolitan Airport.
 
 
 21
 On facts very much like the ones in the present case, we held that the encounter in Flowers had no Fourth Amendment implications. In so doing we quoted from Florida v. Royer:
 
 
 22
 [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.
 
 
 23
 Flowers, 909 F.2d at 147 (citations omitted) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). Considering the district court's findings of fact, the present case is legally indistinguishable from Flowers.
 
 
 24
 Ms. Coon denies that she consented to the search in question and argues that "[w]hen a seizure has taken place that doesn't result from objective justification, there is a strong presumption that the consent is involuntary." Brief of Appellant at 21. In support of this proposition she cites United States v. McCaleb, 552 F.2d 717 (6th Cir.1977), and other cases which are distinguishable because in those cases the consent was preceded by, and therefore presumptively induced by, unconstitutional police conduct.
 
 
 25
 Defendant Coon also argues that her consent to the search in question was vitiated because the police officers never advised her that she had a right to refuse to consent. It suffices to say that such advices are not constitutionally required. Schneckloth v. Bustamonte, 412 U.S. 218, 231 (1973) (claims of constitutional rights to such advice "universally repudiated ... and, we think, rightly so.").
 
 
 26
 Because the district court's findings of fact have not been shown to be clearly erroneous, we conclude that defendant Coon voluntarily consented to the search of the luggage in her possession without having been subjected previously to a stop or detention in violation of the Fourth Amendment. Thus, since the facts show that there was not a seizure that led to the consent in question, the defendant's consent was therefore untainted, and the district court was correct in overruling the motion to suppress evidence.
 
 B. Rule 609 Impeachment
 
 27
 Ms. Coon's final argument is that the trial court abused its discretion in allowing counsel for the government to cross-examine her concerning her two felony convictions for robbery, one in November 1985, the other in February 1986. Defendant Coon argues that robbery is a crime not involving dishonesty, fraud, or deceit, and, therefore, her two robbery convictions do not bear on her credibility, at least not to the point of outweighing their prejudicial effects. For its part, the government does not attempt to justify the admission of these prior convictions on grounds that they are crimes of falsehood within the meaning of Rule 609(a)(2). Rather, it argues that the prejudicial effect of defendant's two prior robbery convictions was outweighed by their probative value in this case because this case might well turn on the credibility of the defendant as a witness.
 
 
 28
 In United States v. Williams, 587 F.2d 1, 2 (6th Cir.1978) (per curiam order), we found no abuse of discretion in a trial court's ruling that a conviction for attempted armed robbery could be used to impeach a defendant on trial for possessing and passing counterfeit notes. Other circuits, as well, have decided that prior robbery convictions are admissible for impeachment purposes under the provisions of Rule 609(a)(1). United States v. Browne, 829 F.2d 760, 764 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988); United States v. Washington, 746 F.2d 104, 107 (2d Cir.1984); United States v. Grandmont, 680 F.2d 867, 872 (1st Cir.1982); United States v. McMillian, 535 F.2d 1035, 1039 (8th Cir.1976), cert. denied, 434 U.S. 1074 (1978). The defendant has cited us to no case holding the contrary.
 
 
 29
 The credibility of the defendant was a key question in the trial of this case because her testimony, if believed, constituted a complete defense to the charge. If, as she claimed, she was the innocent dupe of some shadowy friends who tricked her into being a drug "mule," then her possession of cocaine was innocent and not "knowing." On the other hand, a criminal record of previous robbery convictions might indicate that Ms. Coon was the type of person who could abandon her witness' oath if she felt it convenient to do so. Considering the centrality of the credibility issue in this case and the recency of Ms. Coon's previous convictions, the district court did not abuse its discretion in finding that the probative value of the prior convictions outweighed their prejudical effects.
 
 IV.
 
 30
 For the reasons stated, the judgment of conviction is AFFIRMED.
 
 
 
 [1]
 Defendant apparently abandoned the strategy of disclaiming the luggage in question, at least for the purposes of her motion to suppress. A successful disclaimer, of course, would have undercut her standing to move for suppression