935 F.2d 271
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Derrick TAYLOR, and Darius Wilburn, Defendants-Appellants.
 Nos. 90-6076, 90-6077.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Derrick Taylor and Darius Wilburn, the two defendants involved in this case, appeal from their convictions for possession with the intent to distribute cocaine and use of a firearm in a drug trafficking crime. Taylor maintains that insufficient evidence was introduced to convict and that the district court erred in denying his motion to suppress certain statements. Wilburn maintains that there was insufficient evidence to convict. Because we find that none of the claims have merit, we affirm the district court.
 
 I.
 
 2
 On August 16, 1989, two officers with the Memphis Police Department, Officer Lewis and Officer Ingram, observed a vehicle they considered suspicious. The officers "ran" the Arkansas license plate and discovered that the plate did not "belong" to the automobile. The officers suspected that the car might have been stolen.
 
 
 3
 By the time the officers had received this information, the vehicle was parked on the street. The driver, defendant Darius Wilburn, had left the car and was standing across the street. The officers approached Wilburn to question him concerning the failure of the license plate to match the vehicle. When the officers asked Wilburn for a drivers license, Wilburn stated that he did not have one. The officers placed him under arrest for driving without a license.
 
 
 4
 After placing Wilburn under arrest, the officers approached Wilburn's car. Sitting on the front passenger side was the defendant Taylor. In the back seat was Emanuel Clayborn. A fourth individual, Marron Thomas, had exited the vehicle and entered a nearby beauty salon. One of the police officers saw a .22 caliber pistol on the front seat. The officer drew his weapon and ordered everyone to vacate the car. Officer Ingram conducted a pat down search of Taylor and discovered some bullets in his pocket. Officer Ingram immediately asked Taylor, "where is the gun?" Taylor repleid that it was "in the glove compartment." No Miranda warnings had yet been given to Taylor. A further search of Taylor's person uncovered some cocaine in a pocket. The officers discovered several packages of crack and a loaded pistol inside the glove compartment. Some more cocaine was located in a plastic bag in the passenger compartment. In the trunk of the car was a large amount of cocaine and a shotgun.
 
 
 5
 The district court held that the statement by Taylor that the gun was "in the glove compartment" was admissible. The court held that the statement was made voluntarily during a legitimate Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). The court also denied the defendants' motions for acquittal based on insufficient evidence. The jury was presented with interrogatories concerning whether the defendants possessed the cocaine in the various locations. The jury did not find Taylor possessed the cocaine found in the trunk but that he did possess the cocaine found in his pocket, in the passenger compartment and in the glove compartment. Wilburn was found to have possessed the cocaine in the trunk, in the passenger compartment, and in the glove compartment. The jury convicted the defendants of possession of cocaine with the intent to distribute and with the use of a firearm in connection with a drug trafficking offense. Each defendant received 87 months in prison. Sixty months of each sentence was for the weapons offense.
 
 II.
 
 6
 Taylor maintains that the district court erred in allowing the introduction of his statement to the police that the gun was "in the glove compartment." As stated, the district court held that it was a voluntary statement made during a legal Terry stop. The defendants maintain that the search was conducted incident to arrest and that the officers violated Miranda.
 
 
 7
 The clearly erroneous standard of review applies to factual findings by a district judge in a criminal case considering a motion to suppress evidence. United States v. Coleman, 628 F.2d 961 (6th Cir.1980). The confrontation between Taylor and the police can be divided into three constitutionally distinct episodes. See United States v. Winfrey, 915 F.2d 212 (6th Cir.1990), cert. denied, 111 S.Ct. 709 (1991). First, the police approached the car to ask a few questions. Second, the officers spotted the handgun on the front seat. Third, Officer Ingram found bullets in the defendant Taylor's pocket and elicited the statement.
 
 
 8
 Not all encounters between the police and citizens are seizures within the meaning of the fourth amendment. Id. at 216. Police questioning by itself does not implicate the search and seizure clause. In this case, the police merely approached the car and asked a few questions. The officers' conduct "was low-key, non-intimidating, and non-coercive." United States v. Flowers, 909 F.2d 145, 147 (6th Cir.1990).
 
 
 9
 When the officers approached the car they knew that the license plate did not match and that the car may have been stolen. They looked inside and saw a handgun on the front seat. Both officers at this time had reason to believe that the two individuals in the car were armed. The government maintains that under Terry, the officers had a right to briefly detain the suspects and search for other weapons.
 
 
 10
 In Terry, the Supreme Court held that the police, when confronted with a suspect that they have a reasonable suspicion to believe is armed or is involved in criminal conduct, may conduct a pat down search and ask a few questions. "The stop and inquiry must be reasonably related to the justification for their initiation." Terry v. Ohio, 392 U.S. 1, 29 (1968). The officers' investigative methods must be reasonable under the circumstances. Winfrey, 915 F.2d at 216. The officers' conduct in this situation meets both criteria.
 
 
 11
 The officers saw in plain view a gun on the front seat of the car. Under Terry, the officers had the right to detain the suspects and search them for additional weapons. It is clear that the officers also used reasonable methods in conducting this "stop and frisk." They approached the car only after having already arrested the driver. They did not ask the two passengers to step out of the car, but merely asked them a few questions. When they noticed the handgun on the front seat, they immediately asked the two passengers to exit the vehicle and at least one officer drew his service revolver. It was reasonable for the officers to be concerned about a second gun after the first gun was sighted. They searched the two defendants for weapons and asked questions concerning the possession of weapons but not about other topics. In this context, the officers' conduct was reasonable.
 
 
 12
 The third episode began when Officer Ingram discovered the bullets in Taylor's pocket. When the bullets were found in Taylor's pocket, the officer, under Terry, had the right to ask where the gun was located. As the officer stated, he was concerned that the gun might have been hidden elsewhere on the body.[1] Taylor told the officer the gun was in the glove compartment. The officer retrieved it so that it would not pose a danger to anyone. When the glove compartment was opened, several packages of cocaine were also discovered.
 
 
 13
 A further search of Taylor's body turned up cocaine in his pocket. Of course, when told that the gun was in the glove compartment, the officer was not obligated to take the suspect's word. The officer reasonably searched further to insure that Taylor was not armed. When one gun has already been sighted and bullets to a different caliber gun are discovered, the police have an understandable concern that the suspects might be armed. Both officers' actions throughout the occurrence were reasonable and constitutionally permissible. Miranda is not implicated in this case.[2]
 
 II.
 
 14
 Taylor also maintains that the evidence against him was insufficient to convict him of having the intent to distribute. Taylor concedes that he possessed the cocaine found in his pocket, but not the cocaine found in the passenger compartment and in the glove compartment. The small amount of cocaine found in his pocket was insufficient to trigger the "possession with the intent to distribute" statute. Furthermore, Taylor was sentenced to sixty months for his use of a gun in a drug offense. If properly convicted only of possession, the sentence for the gun offense would have been improper.
 
 
 15
 In deciding whether evidence is sufficient to affirm a denial of a motion for acquittal, the appellate court must view the evidence and all reasonable inferences in the light most favorable to the government. United States v. Gibson, 675 F.2d 825 (6th Cir.), cert. denied, 459 U.S. 972 (1982). If the evidence would allow a reasonable jury to find guilt beyond a reasonable doubt, then the issue must be submitted to the jury. Id. at 829. We deny Taylor's claim because we find that the evidence was sufficient to find guilt beyond a reasonable doubt.
 
 
 16
 As stated, the jury was provided with a list of interrogatories concerning which defendants possessed the various packages of cocaine. The jury determined that Taylor possessed the cocaine found in the glove compartment, in his pocket, and in the passenger compartment. Wilburn was found to have possessed the cocaine found in the glove compartment, the passenger compartment, and in the trunk.
 
 
 17
 A review of the evidence connecting the defendant Taylor to cocaine found in the glove compartment and the passenger compartment is necessary. When bullets were found in Taylor's pocket, the officer asked where the gun was located. Taylor replied that the gun was in the glove compartment. Taylor obviously had access to the unlocked glove compartment because he was seated in the front seat. Furthermore, cocaine was found on his person. He testified that he used drugs but did not sell them. Of course, the jury could reasonably disbelieve his testimony. Wilburn put on several witnesses in an attempt to shift blame to Taylor. Gregory Smith testified that he had seen Taylor with the .22 caliber pistol and that he had observed Taylor sell crack on prior occasions.[3] The jury could, based on the evidence, reasonably believe that Taylor had possession of the drugs found in the glove compartment and in the passenger compartment.
 
 III.
 
 18
 Wilburn maintains that the evidence was insufficient to convict him of any wrongdoing. Primarily, the defendant Wilburn maintains that there was not sufficient evidence that he used a firearm in a drug offense for the jury to convict him of that offense. As stated, if the evidence was such that a reasonable jury could find guilt beyond a reasonable doubt, then the issue must be submitted to the jury.
 
 
 19
 The evidence against Wilburn was primarily circumstantial. Officers found cocaine in the unlocked glove compartment, Taylor's pocket, the passenger compartment, and the trunk of Wilburn's car. Officers discovered three guns in the car. One was on the front seat, one was discovered in the glove compartment, and one in the trunk. In order to sustain the conviction, the evidence must indicate that he had a connection to one of these weapons.
 
 
 20
 The evidence supports a finding that Wilburn possessed two of the weapons discovered by the police in this case: the .22 caliber pistol found on the front seat and the shotgun found in the trunk. Taylor, who was also seated in the front, denied any knowledge of the gun found on the front seat. Furthermore, Taylor called Simun Smith to the stand as a rebuttal witness. Ms. Smith testified that she observed Wilburn sell drugs on several occasions and had observed Wilburn in possession of the .22 caliber pistol. The jury could reasonably infer that Wilburn possessed the pistol.
 
 
 21
 A considerable amount of drugs and a shotgun were found in the trunk of the vehicle. The jury could infer that Wilburn, the driver, was carrying the shotgun to protect the cocaine that was in his trunk.
 
 IV.
 
 22
 Because of the above stated reasons, the conviction of the defendants is AFFIRMED.
 
 
 
 [1]
 Officer Ingram stated that he asked Taylor where the gun was because: "Well, it has happened to me before, usually whenever you discover bullets you know that there is going to be a gun within the immediate area and normally, and before I went to check his crouch around his stomach area where i could easily be grabbed or pulled to the ground, it was basically for my own safety because I wanted to find out where his gun was before I went any further." J.A. at 66
 
 
 [2]
 Even if Miranda had been implicated, Taylor's statement would have been admissible under the public safety exception. New York v. Quarles, 467 U.S. 649 (1984)
 
 
 [3]
 A number of witnesses, including the defendants, gave conflicting accounts concerning who possessed the weapons and the cocaine. When a case involves conflicting testimony, it is for the jury to decide which witnesses are telling the truth