[Cite as *State v. Shrimplin*, 2021-Ohio-3720.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Craig R. Baldwin, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2021CA0006 |
| JEFFREY C. SHRIMPLIN | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:  Criminal Appeal from the Municipal Court,
Case No.  CRB 2000369(A)(B)


JUDGMENT:  Affirmed


DATE OF JUDGMENT ENTRY:  October 18, 2021


APPEARANCES:

For Plaintiff-Appellee

ROBERT A. SKELTON
LAW DIRECTOR
760 Chestnut Street
Coshocton, Ohio  43812

For Defendant-Appellant

JEFFREY G. KELLOGG
5 South Washington Street
Millersburg, Ohio  44654

*Wise, J.*

**{¶1}** Appellant appeals his sentence and conviction on one count of obstructing official business and one count of possession of drug paraphernalia, entered on January 13, 2021, in the Coshocton Municipal Court, following a plea of no contest.

**{¶2}** Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On July 2, 2020, Deputy Jeremy Johnson of the Coshocton County Sheriff's Office was dispatched to Conesville, Ohio, in Coshocton County, on a report of a suspicious vehicle with male passengers inside, driving slowly and looking into houses. (T. at 3, 17). Deputy Johnson did not know the identity of the caller whose call resulted in the dispatch. (T. at 3, 17). When Deputy Johnson arrived in Conesville, he encountered a male and female in a truck. They stated they thought it was the Appellant, Jeffrey Shrimplin, in the vehicle, and it was a gold Buick LeSabre. (T. at 4). Deputy Johnson did not know the occupants of the truck, and they did not provide their names. (T. at 18). The occupants of the truck advised Deputy Johnson as to the general direction where they last saw the vehicle. (T. at 4). The incident in question took place in the middle of the afternoon. (T. at 4).

**{¶5}** The deputy then spotted the vehicle matching the description in a back alley. (T. at 4, 11). The deputy did not know the name of the road. (T. at 4). The road was not wide enough for two vehicles to pass. (T. at 5). When Dep. Johnson came around a corner in the road, he observed a gold Buick LeSabre, with three males inside, stopped in the roadway with another vehicle facing it traveling the opposite direction. (T. at 4-5).

When Dep. Johnson pulled behind the vehicle, Appellant pulled off to the left side of the narrow roadway and stopped. (T. at 5, 18). Dep. Johnson stopped his vehicle, exited, and approached the driver's window of the vehicle and made contact with the three individuals in the car. (T. at 6). Appellant was the driver of the vehicle, and the two passengers were in the back of the vehicle. Deputy Johnson told the court that he found it unusual that there was no one in the front passenger seat. (T. at 27). He asked if there had been another passenger in the vehicle and was told that there had been but that they had just dropped him off. (T. at 29).

{¶6}  Dep. Johnson did not activate his overhead lights. (T. at 5).

{¶7}  Upon approaching the vehicle, Dep. Johnson did not ask for Appellant's identification because he was familiar with Appellant. (T. at 19). Dep. Johnson informed Appellant that he had received a report of a suspicious vehicle in the area. (T. at 24).

{¶8}  The men informed the officer that they were parked in the yard of a person that the unidentified passenger previously dated, that he had approached the home and knocked on the door, but when no one answered he left a note in the door. (T. at 14, 28). Appellant also told the officer that the men had been out looking at a job site where they were going to remove some trees.

{¶9}  Deputy Johnson asked if there had been another passenger in the car riding in the front seat. Appellant stated that his step-son had been with them, but that he had dropped him off at his house.

{¶10} The right rear passenger exited the vehicle with a cigarette, and Dep. Johnson requested identification from him and the other rear passenger. (T. at 6, 21). The

right rear passenger walked around the vehicle and provided identification to Dep. Johnson. (T. at 20-21).

{¶11} The left rear passenger stated that he did not have any identification, did not know his social security number, and only provided a name and date of birth, which the deputy was unable to confirm through dispatch. (T. at 6, 21). Because he was unable to confirm this passenger's identity, he believed the passenger gave him false information. (T. at 8, 13, 21, 25). He asked the passenger if he had a driver's license and was told that he had a State ID in the state of Ohio. The deputy stated that if that were the case, his name and information should have been in the system. (T. at 8-9). Appellant repeatedly told the deputy that he did not know the passenger and had just met him. (T. at 14).

{¶12} At approximately 11 ½ minutes into the encounter while the deputy was still trying to ascertain the identity of the backseat passenger, Appellant asked Dep. Johnson if he could leave the scene to take his car home, explaining that he was hot and nervous about being parked in someone's yard. (T. at 22-23). Deputy Johnson told Appellant that the property owner was not going to give Appellant any trouble because he was there with law enforcement.

{¶13} Deputy Johnson then asked Appellant the location of the tree job they had been looking at. After Appellant described the location of the job and the name of the person who wanted him to remove the trees, at approximately 13 ½ minutes into the conversation, Deputy Johnson viewed what he believed to be drug paraphernalia, like a smoking device, between Appellant's legs. (T. at 10, 23). When he asked Appellant what he had between his legs, Appellant became nervous, started to stutter and fidget and

tried to place a beverage can over top of the instrument. (T. at 10-11). Ultimately Appellant was arrested. (T. at 23).

**{¶14}** On July 6, 2020, Defendant-Appellant Jeffrey C. Shrimplin was arraigned on one count of Obstruction of Official Business, a misdemeanor of the 2nd degree, in violation of R.C. §2921.31(A), and one count of Possession of Drug Paraphernalia, a misdemeanor of the 4th degree, in violation of R.C. §2925.14(C)(1).

**{¶15}** On December 7, 2020, Appellant filed a Motion for Leave to File a Motion to Suppress Evidence *Instanter*, along with the Motion to Suppress Evidence. Appellant also filed a motion to convert the bench trial to a suppression hearing.

**{¶16}** On December 9, 2020, Appellee filed a Memorandum in Opposition to Appellant's *Instanter* Motion.

**{¶17}** The trial court granted Appellant's motion for leave, and a hearing on the Motion to Suppress was scheduled for December 16, 2020.

**{¶18}** On December 16, 2020, a hearing on the motion to suppress was held wherein the court heard the above testimony from Deputy Johnson. The trial court took the matter under advisement. Both parties were granted leave to file written arguments.

**{¶19}** By Judgment Entry filed January 11, 2021, the trial court denied Appellant's Motion to Suppress Evidence.

**{¶20}** A bench trial was scheduled for January 13, 2021, at 11:00 A.M.

**{¶21}** On January 13, 2021, Appellant entered a no contest plea to the charge of Obstructing Official Business, a 2nd degree misdemeanor, and Possession of Drug Paraphernalia, a 4th degree misdemeanor. The trial court imposed a fine of $150.00 on each charge and ordered Appellant to pay court costs. The trial court sentenced Appellant

to serve 10 days in the Coshocton County jail, with 7 days suspended, on condition that Appellant pay his fines by April 7, 2021, commit no other criminal offenses for two (2) years, and notify the clerk of any address change.

**{¶22}** Appellant now appeals, assigning the following error for review:

<u>ASSIGNMENT OF ERROR</u>

**{¶23}** "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/ APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

I.

**{¶24}** In his sole Assignment of Error, Appellant claims that the trial court erred when it denied his motion to suppress. We disagree.

**{¶25}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). As the United States Supreme

Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶26}** In this case, Appellant argues this Court should review the trial court's judgment to deny the motion to suppress to hold that either the trial court failed to apply the appropriate test or correct law and/or the trial court incorrectly decided the ultimate or final issues raised in her motion to suppress.

**{¶27}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶28}** We begin our analysis by noting that Appellant admits there was no traffic stop. (T. at 2). Appellant admits the encounter is consensual up to the time Deputy Johnson requested identification from the passengers in the vehicle. Appellant argues that he was detained upon insufficient facts to support reasonable suspicion of criminal activity.

**{¶29}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. "However, not every contact between a police officer and citizen implicates the Fourth Amendment. 'Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a

"seizure" has occurred.' " *State v. Lopez* (Sept. 28, 1994), Greene App. No. 94 CA 21, 1994 WL 527670, quoting *Terry, supra*, at 19, fn. 16, 88 S.Ct. 1868.

**{¶30}** Ohio law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Taylor* (1995), 106 Ohio App.3d 741, 747–49, 667 N.E.2d 60.

**{¶31}** A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id.* at 747, 667 N.E.2d 60. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers,* 909 F.2d 145, 147 (6th Cir.1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* 501 U.S. at 434–435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U.S. 491, 497–98 [103 S.Ct. 1319, 75 L.Ed.2d 229]. Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no

reasonable suspicion is required. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

**{¶32}** A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747–48, 667 N.E.2d 60.

**{¶33}** A consensual encounter remains consensual even if police officers ask questions, ask to see the person's identification, or ask to search the person's belongings, provided the police do not convey a message that compliance with their requests is required. *Id.* at 435, 111 S.Ct. 2382; *Florida v. Rodriguez,* 469 U.S. 1, 4–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). In *Mendenhall, supra,* at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509, the United States Supreme Court cited examples of circumstances indicating a seizure occurred even where the person did not attempt to leave, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating compliance with the officer's request might be compelled.

**{¶34}** "The second type of encounter is a '*Terry* stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions." *Id.* at 748, 667 N.E.2d 60. Such a stop is valid if the officer had reasonable

and articulable suspicions of criminal activity. *Id.* at 749, 667 N.E.2d 60. However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83–88, Sections. 3.12–3.19.

**{¶35}** A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. This temporary detention, although a seizure, does not violate the Fourth Amendment.

**{¶36}** "The third type of encounter involves a seizure that is the equivalent of an arrest. To perform such a seizure the police officer must have probable cause." *Id.* at 747–748, 667 N.E.2d 60. (Citations omitted). (Emphasis added).

**{¶37}** In the instant case, the trial court found that the encounter began as a consensual one, which then led to a brief investigatory detention. After reviewing the transcript under the totality of the circumstances, we agree with the trial court.

**{¶38}** Appellee's interaction with Appellant began as a consensual encounter which then progressed to an investigative or *Terry* stop such that the Fourth Amendment was not implicated. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.

**{¶39}** Here, the deputy received a dispatch report of a suspicious vehicle followed by a personal report of a suspicious vehicle being driven by Appellant. He then discovered Appellant in the reported vehicle stopped in an alley behind a house. When he approached the vehicle he observed that there was no passenger in the front seat but that there were two passengers in the back seat. Appellant claimed that they had just dropped off the front seat passenger.

**{¶40}** The deputy asked what the men were doing and requested identification from the two rear passengers. The deputy did not request identification from Appellant because he has had previous contact with law enforcement. Only one of the rear passengers was able to provide identification. Appellant told the deputy that he did not know the passenger who had no identification. The men also told the deputy that that passenger had also approached the rear of the one of the houses.

**{¶41}** At approximately 11 ½ minutes in to the encounter, while the deputy was still talking to the rear seat passenger trying to ascertain his identity, Appellant asked the deputy if he could take his car back to his house because he was nervous about being parked in a stranger's yard. The deputy responded that because he was there with law enforcement, the property owner would not give him any trouble.

**{¶42}** The deputy then asked Appellant about the tree job he had mentioned earlier in their conversation, which was given as the reason the men were out together.

At approximately 13 ½ minutes in to the encounter, the deputy observed what he believed to be drug paraphernalia on the seat between Appellant's legs and began to investigate further, which ultimately led to Appellant's arrest.

**{¶43}** Upon our review of these facts, the record and the body-cam video, we find that the deputy's approach of the vehicle and ensuing conversation with Appellant and his passengers began as a consensual encounter. Once the men reported to the deputy that one of them had approached the rear of one of the houses and then was either unable or unwilling to provide credible proof of his identity, the deputy was justified in detaining Appellant and the passengers while he continued his investigation. We further find that the deputy did not tell Appellant that he could not leave the scene, only that he did not need to worry about being parked on someone else's property at that time.

**{¶44}** For the above reasons, we find that Deputy Johnson possessed a reasonable, articulable suspicion to justify a brief investigatory detention of Appellant.

**{¶45}** Appellant's sole assignment of error is overruled.

**{¶46}** For the foregoing reasons, the judgment of the Municipal Court of Coshocton County, Ohio, is hereby affirmed.

By: Wise, J.
Baldwin, P. J., and
Gwin, J., concur.

JWW/kw 1008