[Cite as *State v. Imani*, 2017-Ohio-8113.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. CT2016-0067 |
| KWAME IMANI | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
                             Pleas, Case No.  CR2016-0231


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      October 5, 2017


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

D. MICAHEL HADDOX                       DAVID A. SAMS
PROSECUTING ATTORNEY                    Box 40
GERALD V. ANDERSON II                   West Jefferson, Ohio  43162
ASSISTANT PROSECUTOR
27 North 5th Street, P.O. Box 189
Zanesville, Ohio  43702-0189

*Wise, J.*

{¶1}  Appellant Kwame Imani appeals his conviction and sentence entered in the Muskingum County Court of Common Pleas following a plea of No Contest to one count of possession of drugs (cocaine) and one count of possession of drugs (marijuana).

{¶2}  Appellee is the State of Ohio.

STATEMENTS OF FACTS AND CASE

{¶3}  On or about July 20, 2016, Appellant, Kwarne Imani, was indicted on one count of Possession of Drugs (Cocaine), a felony of the fifth degree, and one count of Possession of Drugs (Marijuana), a minor misdemeanor.

{¶4}  On November 23, 2016, a suppression hearing was held. The following testimony was presented by Sergeant Comstock at the hearing:

{¶5}  Shortly after 3:00 a.m. on March 27, 2016, Sgt. Comstock was on routine patrol when he observed a man, later identified as Defendant-Appellant Kwame Imani, slumped over the steering wheel of a vehicle parked on the side of a public roadway. (Supp. T. at 5-6, 60). Sgt. Comstock parked behind the vehicle without his overhead lights activated, exited his cruiser and approached the parked vehicle from the passenger side to conduct a welfare check on Appellant. (Supp. T. at 6, 61). Sgt. Comstock was shining his flashlight into the vehicle as he approached, and he observed that Appellant was looking at his cell phone. (Supp. T. at 7). When Appellant noticed the light, he appeared startled so Sgt. Comstock shined the light on his badge, identified himself as the police, and asked if Appellant was okay. (Supp. at 7). Sgt. Comstock testified that if Appellant had responded that he was okay, Sgt. Comstock would have asked for identification to run for warrants, but otherwise he would have left. (Supp. T. at

63-64). Appellant did not tell Sgt. Comstock that everything was fine but instead began frantically moving around, digging in his pockets, and suddenly exited the vehicle. (Supp. T. at 7). Appellant reached in and out of his pockets approximately ten (10) times and jumped out of the vehicle within five (5) seconds. (Supp. T. at 24). Appellant was not ordered out of the vehicle and Sgt. Comstock did not have a weapon drawn. (Supp. T. at 7, 10).

{¶6} When Appellant exited the vehicle, he began digging in his pockets and continually putting his hands down. (Supp. T. at 8). Sgt. Comstock stated that he was concerned by Appellant's behavior in exiting his vehicle abruptly after learning it was the police, and digging in his pockets, so he ordered him to place his hands on top of the vehicle. (Supp. T. at 8). Appellant placed his hands on the top of the vehicle briefly before taking them back off, turning away from Sgt. Comstock, reaching into his front right pocket, completely turning his back to Sgt. Comstock, looking over his shoulder at him, and failing to follow Sgt. Comstock's commands. (Supp. T. at 8-9, 68). From the time Sgt. Comstock first approached the vehicle to the time that Appellant exited the vehicle, turned away from Sgt. Comstock, and was reaching into his pocket, not even thirty (30) seconds had passed. (Supp. T. at 8, 63).

{¶7} Sgt. Comstock testified that he called dispatch for assistance and secured Appellant for officer safety. (Supp. T. at 9, 12, 68-69, 72). Sgt. Comstock stated that he observed something shiny in the front pocket of Appellant's hooded sweatshirt and asked what it was. (Supp. T. at 11, 55-56). Appellant told Sgt. Comstock that he had been drinking and Sgt. Comstock retrieved an open container of alcohol from the pocket. (Supp. T. at 11). Appellant then admitted that he had marijuana on him. (Supp. T. at 11).

Appellant's pockets were searched and plastic baggies containing marijuana and cocaine were found on his person. (Supp. T. at 12).

**{¶8}** On November 17, 2016, the trial court denied Appellant's motion to suppress.

**{¶9}** On November 23, 2016, Appellant entered a plea of No Contest.

**{¶10}** On December 19, 2016, the trial court sentenced Appellant to two (2) years of community control, with an alternate sentence of eleven (11) months.

**{¶11}** Appellant now appeals, setting forth the following assignment of error:

## **ASSIGNMENT OF ERROR**

**{¶12}** "I. DEFENDANT-APPELLANT WAS SEIZED IN THE ABSENCE OF REASONABLE SUSPICION."

## **I.**

**{¶13}** In his sole Assignment of Error, Appellant argues that the trial court erred in overruling his motion to suppress. We disagree.

**{¶14}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d

1141 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993). As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶15} Appellant challenges the trial court's ultimate conclusion finding the evidence resulted from a valid search. Appellant argues the officers lacked reasonable articulable facts to stop him and conduct an investigation. More specifically, Appellant herein argues that the he was unlawfully seized when the officer shined the flashlight on him and identified himself as a police officer while he was lawfully parked on a public street. Appellant argues the officer had no right to approach the vehicle in which he was sitting and search him.

{¶16} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. "However, not every contact between a police officer and citizen implicates the Fourth Amendment. 'Only when the officer, by means of physical force or show of

authority, has in some way restricted the liberty of a citizen may we conclude that a "seizure" has occurred.' " *State v. Lopez* (Sept. 28, 1994), Greene App. No. 94 CA 21, quoting *Terry, supra*, at 19, fn. 16.

{¶17} Ohio law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Taylor* (1995), 106 Ohio App.3d 741, 747-49, 667 N.E.2d 60.

{¶18} A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id.* at 747, 667 N.E.2d 60. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers,* 909 F.2d 145, 147 (6th Cir.1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* 501 U.S. at 434–435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U.S. 491, 497–98 [103 S.Ct. 1319, 75 L.Ed.2d 229]. Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621,

628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

**{¶19}** A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747-48, 667 N.E.2d 60.

**{¶20}** "The second type of encounter is a '*Terry* stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. *Id.* at 748, 667 N.E.2d 60, 106 Ohio App.3d 741, 667 N.E.2d 60. Such a stop is valid if the officer had reasonable and articulable suspicions of criminal activity. *Id.* at 749, 667 N.E.2d 60. However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion

into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88, Sections. 3.12-3.19.

{¶21} A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. This temporary detention, although a seizure, does not violate the Fourth Amendment.

{¶22} The third type of police-citizen encounter is an arrest. For an arrest to be valid the officer must have "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson,* 2005-Ohio-554, 2005 WL 332804, ¶ 27; *Flowers,* 909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston,* 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376 (1972), quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1662, 134 L.Ed.2d 911 (1996). A police officer may draw inferences based

on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz,* 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975).

**{¶23}** The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard. *State v. Smith,* 45 Ohio St.3d 255, 258–259, 544 N.E.2d 239, 242 (1989), *reversed sub nom. Smith v. Ohio,* 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990); *State v. Crossen,* 5th Dist. Ashland No. 2010–COA–027, 2011-Ohio-2509, 2011 WL 2040797, ¶ 13.

**{¶24}** This Court has previously recognized a distinction between a *Terry* stop and a consensual encounter. *State v. Daniels* (May 12, 2003), Stark App. No. 2002CA00290, quoting *State v. Taylor* (1995), 106 Ohio App.3d 741, 747, 667 N.E.2d 60.

**{¶25}** Therefore, the first issue we must address is whether in fact the stop in this case was a *Terry* stop or a consensual police encounter. We review the issue of the existence of a consensual encounter by examining the totality of the circumstances. *See Florida v. Royer* (1983), 460 U.S. 491, 506-507, 103 S.Ct. 1319, 75 L.Ed.2d 229.

**{¶26}** Upon review, under the totality of the circumstances, we conclude the events in the case *sub judice* constituted a consensual encounter such that the Fourth Amendment was not implicated. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. In this case, Officer Comstock was on patrol at approximately 3:00 a.m. when he observed a person who appeared to be slumped over behind the steering wheel in the driver's seat of a vehicle which was parked on a public street. (Supp. T. at 5-6). He circled the block and noticed that the person did not appear to have moved at all. *Id.* Officer Comstock pulled his cruiser in behind the subject's

vehicle to check on his welfare. *Id.* He did not block the vehicle. He did not have his lights activated. He approached the vehicle from the passenger side and, when he looked through the passenger side window, was able to observe that the occupant was looking down at his cell phone. (Supp. T. at 7). Officer Comstock did not have his weapon drawn, nor did he direct any orders at Appellant. When Appellant appeared startled by the flashlight outside of his vehicle, Officer Comstock shined his flashlight on his badge and said "[hey, it's just the police, are you okay?" (Supp. T. at 7). Appellant responded by "frantically moving around, digging in his pockets, acting real erratic, and then suddenly exited the vehicle quickly." (Supp. T. at 7). Officer Comstock stated that he did not order Appellant out of the vehicle. *Id.*

{¶27} After appellant exited the vehicle so suddenly, the officer again asked Appellant if he was okay. (Supp. T. at 8). Officer Comstock stated that Appellant again began digging in his pockets. At this time, the officer advised Appellant to place his hands on top of the vehicle. *Id.* Appellant took his hands off of the vehicle after only a moment, and the officer again asked Appellant to keep his hands where he could see them. *Id.* Appellant next turned away from the officer and began reaching in to his front pants pocket, looked over his shoulder at the officer, turned away and refused to follow the officer's commands to show him his hands. *Id.* It was at this time, that Officer Comstock drew his weapon for safety and again advised Appellant to place his hands back on top of the vehicle where he could see them. (Supp. T. at 9). At that time, the back-up unit had arrived, and Officer Comstock advised the backup unit officer to secure Appellant for officer safety. *Id.* Officer Comstock asked Appellant why he was behaving in this erratic manner and asked him if he had anything on him, "any weapons or anything like

that?" (Supp. T. at 11). Officer Comstock then noticed something shiny in the front pocket of Appellant's sweatshirt. *Id.* Officer Comstock asked Appellant what he had in the pocket and he responded by stating that he had been doing a little drinking. *Id.* Officer Comstock removed a partially consumed bottle of liquor from Appellant's pocket. *Id.* Officer Comstock asked Appellant if he had anything else on him and Appellant admitted that he might have a little bit of weed on him. *Id.* The officers then found three plastic baggies in Appellant's front pants pocket, one of which was later determined to be marijuana, one with powder cocaine, and one with crack cocaine. (Supp. T. at 12).

### *Terry* Pat-Down of Appellant

{¶28} Authority to conduct a pat down search does not flow automatically from a lawful stop, and a separate inquiry is required. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment requires an officer to have a "reasonable fear for his own or others' safety" before frisking. *Id.* Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.' " *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), *citing Terry, supra,* 392 U.S. at 27, 88 S.Ct. 1868. Whether that standard is met must be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual officers involved. *United States v. Hill,* 131 F.3d 1056, 1059 (D.C.Cir.1997), *citing Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶29} As stated above, almost immediately upon Officer Comstock approaching the car, Appellant exited the vehicle and began behaving erratically. Appellant immediately began digging around in his pockets and ignored several requests by Officer

Comstock to stop and to show his hands. Under the totality of the circumstances, a reasonable officer could believe that Appellant may have been reaching for a weapon. *State v. Shrewsbury,* 4th Dist. Ross. No. 13CA3402, 2014-Ohio-716, 2014 WL 812428, ¶ 26. In *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), a case also involving a *Terry* stop, the officer ordered the defendant to step out of the car so he could see the defendant's movements more clearly. *Id.* The defendant ignored the officer's order, and this provided ample reason for the officer to fear for his safety. *Id.*

{¶30} In the case at bar, we find under the totality of the circumstances the pat down of Appellant was lawful because a reasonably prudent person in this situation would have been justified to believe his safety was compromised.

{¶31} Based upon the above, we find the trial court properly overruled the motion to suppress.  Appellant's sole Assignment of Error is overruled.

{¶32} For the foregoing reasons, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.


JWW/d 0926