[Cite as *State v. Berry*, 2018-Ohio-4791.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2018AP060027 |
| | : | |
| HANK W. BERRY, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:           Appeal from the Tuscarawas County
                                   Court of Common Pleas, Case No. 2018
                                   CR 02 0057



JUDGMENT:                          REVERSED AND REMANDED



DATE OF JUDGMENT ENTRY:            November 29, 2018



APPEARANCES:

For Plaintiff-Appellant:                    For Defendant-Appellee:

MICHAEL J. ERNEST                           MARK PERLAKY
TUSC. CO. ASST. PROSECUTOR                  TUSC. CO. PUBLIC DEFENDER
125 East High Ave.                          153 N. Broadway St.
New Philadelphia, OH 44663                  New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellant state of Ohio appeals from the June 12, 2018 judgment entry of the Tuscarawas County Court of Common Pleas granting the motion to suppress of appellee Hank W. Berry, Jr.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose on August 7, 2017, when Dennison Police dispatch advised two witnesses saw a black Dodge Stratus in Thornwood Park, near the basketball courts. The caller stated she believed individuals in the car were "shooting up."

{¶3}   Ptl. Boitnott arrived at the park but didn't see the car.  He did see the witnesses who called in the complaint: two women he was familiar with as caretakers of the park.  He asked the women what direction the car went in, and when they pointed it out, Boitnott was surprised because he had traveled from that direction and didn't pass a black Dodge Stratus.

{¶4}   Boitnott turned around and went up the street, where he found a black Dodge Stratus parked one block away, with two occupants.  The car was already parked, although Boitnott did not recall whether it was running, so he did not perform a traffic stop. Instead, he walked up to the driver's-side door and encountered appellee sitting in the driver's seat.  Boitnott informed him of the report about drug use, and appellee denied he and the passenger had been in the park.

{¶5}   The female passenger, though, said they were just in the park "making out."

{¶6}   As Boitnott spoke to appellee, he was aware dispatch said the individuals appeared to be "shooting up," and Boitnott observed track marks on appellee's arms.

Boitnott explained "shooting up" refers to intravenous drug use, which may be evidenced by track marks on a user's arms.

{¶7}   Boitnott also observed appellee trying to conceal something as they spoke. Appellee was attempting to push something under the driver's seat with his foot.

{¶8}   The female passenger told Boitnott they were in the area to speak to an individual familiar to Boitnott, whose house was to the right of where the Stratus was parked.  Boitnott testified the house is the location of suspected drug trafficking activity.

{¶9}   The female passenger was the registered owner of the vehicle and Boitnott asked for her permission to search.  She agreed.  Appellee and the female got out of the car.  Boitnott asked appellee about the track marks on his arms and appellee said they were from a battery exploding.

{¶10} When appellee stepped out of the car, Boitnott noticed a Crown Royal bag inside the car which contained a clear plastic baggie.  Boitnott also looked under the driver's seat, in the area where he believed appellee was trying to hide something, and found a keychain with a small canister attached to it.   The canister contained methamphetamine.

{¶11} Upon cross-examination, Boitnott testified that once he approached the vehicle, he did not consider appellee or the passenger free to leave, although he didn't communicate this to them.   He intended to investigate the complaint of individuals possibly "shooting up" in a black Dodge Stratus.  Appellee introduced the bodycam video into evidence.

{¶12} Appellee was charged by indictment with one count of aggravated possession of drugs pursuant to R.C. 2925.11(A) and R.C. 2925.11(C)(1)(a), a felony of

the fifth degree, and one count of drug paraphernalia pursuant to R.C. 2925.14(C)(1) and R.C. 2925.14(F)(1), a misdemeanor of the fourth degree.

{¶13} Appellee entered pleas of not guilty and filed a motion to suppress, arguing the arresting officer had no reasonable and articulable suspicion of criminal activity to justify stopping appellant. Appellant filed a memorandum in opposition. An evidentiary hearing proceeded on April 25, 2018, and on June 12, 2018, the trial court sustained the motion to suppress.

{¶14} Appellant timely filed a notice of appeal and a Crim.R.12(K) certification.

{¶15} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶16} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS AS REASONABLE ARTICULABLE SUSPICION EXISTED TO DETAIN THE APPELLEE WITHOUT A WARRANT."

**ANALYSIS**

{¶17} In its sole assignment of error, appellant argues the trial court erred in granting appellee's motion to suppress. We agree.

{¶18} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145,

675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶19} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶20} In the instant case, appellant argues the trial court incorrectly decided the ultimate issue raised in the motion to suppress, to wit, whether Boitnott had reasonable and articulable suspicion to elevate the encounter with appellee to an investigative stop.

{¶21} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the government from conducting unreasonable

searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). "However, not every contact between a police officer and citizen implicates the Fourth Amendment. "Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Lopez*, 2nd Dist. Greene No. 94 CA 21, 1994 WL 527670 (Sept. 28, 1994), quoting *Terry, supra*, at 19, fn. 16, 88 S.Ct. 1868.

{¶22} Upon our review of the record, we find Boitnott's interaction with appellee began as a consensual encounter and progressed to an investigative or *Terry* stop. Ohio law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Taylor*, 106 Ohio App.3d 741, 747–49, 667 N.E.2d 60 (2nd Dist.1995).

{¶23} A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id.* at 747. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[M]erely approaching an individual on the street or in another public place[,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers,* 909 F.2d 145, 147 (6th Cir.1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search

his or her luggage." *Bostick,* 501 U.S. at 434–435 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. *Bostick,* 501 U.S. at 434.

{¶24} A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747–48.

{¶25} "The second type of encounter is a '*Terry* stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions." *Id.* at 748. Such a stop is valid if the officer had reasonable and articulable suspicions of criminal activity. *Id.* at 749. However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer.

*State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83–88, Sections. 3.12–3.19.

{¶26} A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. This temporary detention, although a seizure, does not violate the Fourth Amendment.

{¶27} The third type of police-citizen encounter is an arrest. For an arrest to be valid the officer must have "probable cause to believe a crime has been committed and the person stopped committed it." *State v. Richardson,* 5th Dist. Stark No. 2004CA00205, 2005-Ohio-554, ¶ 27; *Flowers,* supra, 909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston,* 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376 (1972), quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision

whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1662, 134 L.Ed.2d 911 (1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz,* 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975).

{¶28} This Court has previously recognized a distinction between a *Terry* stop and a consensual encounter. *State v. Daniels*, 5th Dist. Stark No. 2002CA00290, 2003-Ohio-2492 (May 12, 2003), ¶ 22, quoting *Taylor*, supra, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2nd Dist.1995). Therefore, the first issue we must address is whether in fact the stop in this case was a *Terry* stop or a consensual police encounter. We review the issue of the existence of a consensual encounter by examining the totality of the circumstances. *See Florida v. Royer*, 460 U.S. 491, 506–507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

{¶29} Appellant argues Boitnott's initial encounter with appellee was consensual and we agree that under the totality of the circumstances, the initial events in the case *sub judice* constituted a consensual encounter such that the Fourth Amendment was not implicated. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Boitnott responded to a complaint of persons "shooting up" in a black Dodge Stratus, located a black Dodge Stratus with two occupants parked a block away, and approached the driver's side. "[A]pproaching the occupants of a parked car to ask questions does not constitute a seizure." *State v. Jack*, 156 Ohio App.3d 260, 2004-Ohio-775, 805 N.E.2d 187, ¶ 13 (2nd Dist.), citing *State v. Carter,* 2nd Dist. Montgomery No. 19833, 2004-Ohio-454, 2004 WL 225309. Boitnott did not block the vehicle, did not have

his lights activated, and did not have his weapon drawn, nor did he direct any orders at appellee. *State v. Imani*, 5th Dist. No. CT2016-0067, 2017-Ohio-8113, 98 N.E.3d 1149, ¶ 26. Boitnott testified that once he spotted the car and began speaking to the occupants, he did not consider them to be free to leave, but as appellant points out, Boitnott's subjective intention is immaterial. The subjective intent of the officer to allow the individual to leave is irrelevant; the test is objective and is based upon whether a reasonable person would have felt free to leave. *State v. Wallace*, 145 Ohio App.3d 116, 122, 761 N.E.2d 1143 (6th Dist.2001), citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509, at fn. 6 (1980).

{¶30} As he spoke to appellee and the female passenger, Boitnott observed track marks on appellee's arms and noticed appellee's furtive movements. Further, appellee first denied the pair was in the park, then admitted they were in the park (albeit "making out") when the female said so. The paramount issue thus posed by the instant case is whether Boitnott had reasonable and articulable suspicion to elevate the encounter from a consensual encounter to an investigative encounter under the totality of these circumstances. The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Reece*, 5th Dist. Delaware No. 17 CAC 03 0019, 2018-Ohio-150, --N.E.3d--, ¶ 9, citing *State v. Andrews*, 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

State v. Reece, 5th Dist. Delaware No. 17 CAC 03 0019, 2018-Ohio-150, --N.E.3d--, ¶ 10, citing *State v. Caplinger*, 5th Dist. Muskingum No. CT2013-0018, 2013-Ohio-5675, 2013 WL 6834807, ¶ 16.

{¶31} In the instant case, the totality of the circumstances included the call to dispatch regarding possible drug use in the park, Boitnott's contact with the caller, his observation of a car matching the description a short distance away, the track marks on

appellee, appellee's furtive movements, the different stories from appellee and the passenger, and the admission to having been in the park.

{¶32} Upon our review of the record, we find Boitnott had reasonable, articulable suspicion sufficient to justify an investigation. *State v. Woodgeard*, 5th Dist. Fairfield No. 01CA50, 2002-Ohio-3936, [parked vehicle, midnight, police "saw heads moving"]; *State v. James*, 5th Dist. Coshocton No. 2014CA0016, 2015-Ohio-587, [driving without headlights through marked parking lanes, citizen tip]; *State v. Prigmore*, 5th Dist. Stark No. 2005-CA-00115, 2005-Ohio-6952 [parked car, high drug activity, passenger slid down into the seat, incense burning inside the car].

{¶33} Appellant's sole assignment of error is sustained.

## CONCLUSION

{¶34} Having sustained the assignment of error, the judgment of the Tuscarawas County Court of Common Pleas is hereby reversed and the matter is remanded for further proceedings consistent with this opinion.

By:  Delaney, J.,

Wise, John, P.J. and

Hoffman, J., concur.