[Cite as *State v. Powell*, 2026-Ohio-592.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25 CA 15 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. 24 CR 135 |
| PAIGE POWELL | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: February 19, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Kevin W. Popham, Appellate Judges

**APPEARANCES:** MARK A. PERLAKY, for Plaintiff-Appellee; TODD W. BARSTOW, for Defendant-Appellant.

*King, P.J.*

{¶ 1}  Defendant-Appellant, Paige Powell, appeals the February 13, 2025 judgment entry of the Guernsey County Court of Common Pleas denying her motion to suppress.  Plaintiff-Appellee is the State of Ohio.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On August 14, 2024, the Guernsey County Grand Jury indicted Powell on two counts of aggravated possession of drugs in violation of R.C. 2925.11 and one count of illegal conveyance of drugs into a detention facility in violation of R.C. 2921.36.  Count 3, one of the possession counts, stemmed from a police encounter on March 30, 2024.  The other two counts arose from an arrest on March 28, 2024.  The March 30, 2024 encounter is the subject of this appeal.

{¶ 3}  On the evening in question, Cambridge Police Patrolman Steven Keene was on routine patrol when he observed Powell's vehicle parked in a parking lot across the street from a known narcotics house.  He recognized Powell's vehicle and knew she had recently been arrested for drug possession.  As Patrolman Keene approached the vehicle, Powell exited the vehicle and spoke to him.  She stated she had to pay "Wes" a $5 debt.  Patrolman Keene knew Wes was a well-known drug dealer and user.  He observed sandwich baggies in the driver's side door pocket which he knew were routinely used to store illegal drugs.  Powell denied having any illegal drugs but was acting suspiciously with her purse.  Drug paraphernalia was located in the purse.

{¶ 4}  On December 27, 2024, Powell filed a motion to suppress pertaining to Count 3, arguing Officer Keene lacked a reasonable suspicion to approach her vehicle for the sole purpose of conducting a drug investigation.  A hearing was held on February 10, 2025.  By judgment entry filed February 13, 2025, the trial court denied the motion, finding the initial contact was a consensual encounter which then turned into an investigatory stop.

{¶ 5}  On May 13, 2025, Powell pled no contest to the possession counts; the illegal conveyance count was dismissed.  By judgment entry filed on the same date, the trial court entered a judgment of conviction and sentenced Powell to eleven months on each count, to be served consecutively.

{¶ 6}  Powell filed an appeal with the following assignment of error:

I

{¶ 7}  "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

I

{¶ 8}   In her sole assignment of error, Powell claims the trial court erred in denying her motion to suppress.  We disagree.

{¶ 9}   As stated by the Supreme Court of Ohio in *State v. Leak,* 2016-Ohio-154, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).   On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶ 10} That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review.  *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).   Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Id.* at 698.

{¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1 (1968); *State v. Mays,* 2008-Ohio-4539, ¶ 7, citing *State v. Orr,* 2001-Ohio-50.

{¶ 12} In keeping with the rights guaranteed under the Fourth Amendment to the United States Constitution, the United States Supreme Court has identified three different types of police-citizen encounters: consensual, investigatory, and arrest. *State v. Taylor,* 106 Ohio App.3d 741, 748-749 (2d Dist. 1995), citing *Florida v. Royer,* 460 U.S. 491 (1983).

{¶ 13} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747, citing *United States v. Mendenhall,* 446 U.S. 544 (1980). "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Id*. at 747-748. The United States Supreme Court stated: "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall* at 554. "The subjective intent of the officer to allow the individual to leave is irrelevant; the test is objective and is based upon whether a reasonable person would have felt free to leave." *State v. Berry,* 2018-Ohio-4791, ¶ 29 (5th Dist.).

{¶ 14} An investigatory stop is also known as a "*Terry* stop." In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman,* 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. Depending upon the circumstances, an encounter may begin as a consensual encounter and progress to an investigatory *Terry* stop.

{¶ 15} In the instant case, the trial court found the initial encounter was consensual and based upon the circumstances surrounding the incident, we agree. Patrolman Keene did not initiate a stop of Powell's vehicle; she was already stopped in a parking lot. February 7, 2025 T. at 9. Patrolman Keene testified when he parked his patrol car, he pulled in behind Powell's vehicle and did not block her vehicle from leaving the parking lot. T. at 9, 11-12, 44. In fact, he parked several car lengths away. *See* State's Exhibit A, Body Camera Video at 21:42:32. He did not activate his overhead lights. T. at 12. As Patrolman Keene approached the vehicle, he observed her moving around in the vehicle, but he could not tell exactly what she was doing or where she was reaching. T. at 35. Powell exited her vehicle without being told to do so. T. at 11, 19. They engaged in a conversation and she was free to leave until he conducted a pat-down search; at that

time, she was detained. T. at 25. The body camera video corroborates these facts. State's Exhibit A. We do not find any evidence of physical force or a show of authority by Patrolman Keene restraining Powell's liberty so that a reasonable person would believe he/she was not free to terminate the initial encounter and leave.

{¶ 16} The next inquiry is whether Patrolman Keene had a reasonable and articulable suspicion to elevate the encounter from a consensual encounter to an investigative encounter under the totality of the circumstances. Patrolman Keene testified he observed Powell in a parked vehicle across the street from a known narcotics house; he recognized her vehicle from previous encounters. T. at 9-10, 46. He was aware that she had been arrested two days prior (March 28, 2024) for possession of narcotics and drug paraphernalia. T. at 13. He did not observe Powell enter or exit the known drug house and he did not see anyone around Powell's vehicle. T. at 42-43. As he approached the vehicle, Powell exited the vehicle on her own accord. T. at 11, 19. He thought she was agitated that she was having another encounter with police and appeared nervous. T. at 19, 48. He asked if he could search her vehicle and she stated, "I'd rather you not." Body Camera Video at 21:43:14. She explained she was there to pay "Wes" her $5 debt; Wes was a known drug dealer and user who lived in one of the nearby residences. T. at 20, 48-49. She did not want to part with her purse which in Patrolman Keene's experience could be an indication that narcotics or drug paraphernalia may be contained therein. T. at 21. He observed a wad of sandwich baggies in the driver's side door which again, in his experience, were used for the storage, sale, and transportation of narcotics. T. at 21, 23, 39. Powell stated the police had left them in her vehicle after the previous encounter; he thought that explanation was unusual or suspect. T. at 22, 47. A second officer arrived

about two and one-half minutes after Patrolman Keene started speaking with Powell. Body Camera Video at 21:45:33. This second officer entered the discussion and said "let's see it" pointing to her purse and she handed it over. Body Camera Video at 21:47:00. Patrolman Keene then conducted the pat-down of Powell because of the plain view baggie observation and because the second officer found drug paraphernalia in her purse; at that point she was detained. T. at 23-25. Patrolman Keene testified to the indicators that raised some suspicion of criminal activity (T. at 24):

> The fact that she was across from the house that she was at. The fact that I had known that she was a narcotics user. She was previously arrested two days prior by Patrolman Gombeda, who did come on scene, for narcotics and narcotics paraphernalia.
>
> Given the totality of the circumstances it was reason to believe that she possibly could have been participating in the use of narcotics at that point in time.

{¶ 17} Based upon the totality of the circumstances, we cannot disagree with the trial court's analysis. We find Patrolman Keene "relied on specific articulable facts giving rise to a reasonable suspicion" that Powell was engaging in criminal activity. Powell was parked near a known drug house after being stopped two days prior for possessing drugs and drug paraphernalia, needed to give $5 to a known drug dealer and user, appeared nervous, guarded her purse, and had baggies in her vehicle.

{¶ 18} Upon review, we find the trial court did not err in denying Powell's motion to suppress.

{¶ 19} The sole assignment of error is denied.

{¶ 20} For the reasons stated in our accompanying Opinion, the judgment of the Guernsey County Court of Common Pleas is AFFIRMED.

{¶ 21} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Popham, J. concur.